The Indianapolis and St. Louis Railroad Company *v.* Kennedy.

———————

No. 7515.

THE INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY
*v.* KENNEDY.

| 77 | 507 |
| 157 | 22 |
| 77 | 507 |
| 158 | 670 |

RAILROAD COMPANY.—*Freight Trains.*—*Passengers.*—A railroad company is not required by law to carry passengers, as a common carrier, on its trains for the transportation of freight; but such company may agree to carry passengers on its freight trains, on such reasonable terms and conditions as it may prescribe.

SAME.—*Pleading.*—*Sufficiency of Complaint.*—In such a case, if suit be brought against the company to recover damages for its refusal to carry a passenger on a freight train, in accordance with its agreement, the plaintiff must allege a strict compliance or attempted compliance, on his part, with the terms and conditions imposed by such company; otherwise his complaint will be insufficient.

From the Putnam Circuit Court.

*T. C. Grooms* and *W. A. Brown*, for appellant.
*C. C. Matson* and *H. H. Mathias*, for appellee.

Howk, J.—This was a suit by the appellee to recover damages for personal injuries alleged to have been sustained by him, without fault on his part, from the wrongful acts of the appellant's servants and employees. The cause, having been put at issue, was tried by a jury, and a verdict was returned for the appellee, assessing his damages in the sum of two hundred dollars. Over the appellant's motion for a new trial, and its exception saved, judgment was rendered on the verdict.

In this court the appellant has assigned, as errors, the following decisions of the circuit court:

1. In overruling its demurrer to appellee's complaint;

2. In striking out the first paragraph of its answer; and,

3. In overruling its motion for a new trial.

1. In his complaint, the appellee alleged, in substance, that the appellant was a corporation, organized under the laws of this State, and operating a line of railway extending from Indianapolis to Terre Haute, Indiana, and, in pursuit of its business, was running divers passenger and freight trains over and along its said line of railway; that, before the time of the commission of the grievances complained of, the appellant had advertised to the public that it would, upon a certain freight train, carry passengers upon a certain stipulated condition, to be complied with by said passengers, to wit: that said passengers should apply at the appellant's local office, where freight-train tickets were kept for sale, before taking passage upon said trains; that on December 12th, 1877, being desirous of taking passage upon said freight train from Greencastle to Fern, Indiana, both stations upon said road, the appellee went to the appellant's office at Greencastle, and there sought to obtain a freight-train ticket, thus complying with the appellant's regulations

in the premises ; that, at the time the appellee so sought to ob-
tain a ticket as aforesaid, the said freight train was standing
upon the appellant's track, and no person was then at the
appellant's office, nor at its depot where said office was sit-
uate, to sell tickets, and the appellee waited at said office un-
til said freight train was about to depart from said station,
and thereupon he got on said freight train, and after it had
started, and when it had run nearly a mile from said station,
the appellant's conductor and other employees on said train,
demanded a ticket of the appellee, and, although he explain-
ed to said conductor or other employee, the fact of his seek-
ing to buy a ticket at said station at Greencastle, and that
he had waited at the appellant's office for that purpose until
said train was about to start, and although he tendered to
the appellant's conductor, or other employee, the full fare
and offered to pay twice the regular fare from said station
of Greencastle to said station of Fern, yet the appellant, by
its employees, disregarding the appellee's rights, refused to
carry him, and compelled him to leave said train at a point
one mile from the station at Greencastle where he had got
on said train ; that the appellee's health, at the time, was
such that he was barely able to be about, and he had, with
great effort, gone to appellant's depot to take said train,
and he so informed said conductor, or other employee, who
put him off said train ; that appellee also informed said con-
ductor, or other employee, that he was then under the care
and treatment of a physician ; that the appellee was com-
pelled to walk from the point where he was put off of said
train back to Greencastle, and, by reason thereof and of the
over-exertion caused by appellant's wrongful act in so put-
ting him off its train, was made very sick, and suffered a
relapse, and was confined to his bed for six weeks ; and the
appellee averred that he would not have suffered such re-
lapse but for said wrongful acts of appellant's servants, with-

out any fault or negligence on the part of the appellee. Wherefore, etc.

We are of the opinion that the facts stated in appellee's complaint were not sufficient to constitute a cause of action in his favor, and against the appellant. It will be observed that the complaint shows upon its face that the appellee rests his right to a recovery in this action, not upon any breach by the appellant of its common-law duty as a common carrier of passengers for hire, but upon its non-compliance with the terms of an alleged special and conditional contract for his carriage as a passenger. In such a case the party plaintiff must show a strict and literal compliance or attempted compliance, on his part, with the conditions imposed by the railroad company, or otherwise his complaint will wholly fail to state a cause of action against such company. The appellant was not bound by any law, statutory or otherwise, to carry passengers on its trains for the transportation of freight; and if, as alleged, it had advertised that upon a certain freight train it would carry passengers upon the stipulated condition, to be complied with by such passengers, that they should apply at its local office, where its freight-train tickets were kept for sale, for such a ticket before taking passage upon such freight train, then, clearly, it was incumbent on the appellee to allege in his complaint, and prove upon the trial, that he had used reasonable efforts to comply with the stipulated condition, and had been prevented from such compliance by the fault or negligence of the appellant's servants. It seems to us that the appellee's complaint, in this case, was radically defective and insufficient in this, that it failed to show any reasonable effort on his part to comply with the condition imposed by the appellant upon its carriage of passengers on its freight trains. The complaint shows that, at some time, on the 12th day of December, 1877, he went to the appellant's depot and sought to obtain a freight-train ticket; that at that time

no person was at its office to sell such tickets, and that he waited at said office until the train was about to depart, and then got on board of said train. For aught that appears in his complaint, the appellee went to the depot long before train time, or before he might reasonably expect that any one would be there to sell such tickets ; and although it was stated that he waited at the office until the train was about to depart, yet it was not alleged, either that no one came to sell such ticket, or that he had afterwards sought to obtain a ticket before the departure of the train. In our opinion, therefore, the court erred in overruling the demurrer to appellee's complaint. *The Pittsburgh, etc., R. W. Co.* v. *Nuzum*, 50 Ind. 141 ; *The Ohio, etc., R. W. Co.* v. *Applewhite*, 52 Ind. 540 ; *The Ohio, etc., R. W. Co.* v. *Hatton*, 60 Ind. 12 ; *The Ohio, etc., R. W. Co.* v. *Swarthout*, 67 Ind. 567.

Passing this question, however, we will briefly consider and decide some of the points made by the appellant's counsel, arising under the alleged error of the circuit court in overruling the motion for a new trial. Counsel earnestly insist, that the verdict of the jury was not sustained by sufficient evidence, and was contrary to law. It seems to us, from our examination of the evidence, that this position is well taken. It was admitted on the trial, "that on December 12th, 1877, defendant had in force a regulation permitting passengers to be carried on its freight trains, only on freight-train orders, to be obtained from the station agents, 1,000 mile tickets, or on passes regularly issued, and prohibiting conductors from accepting from passengers on freight trains any money except such tickets." On the trial of the cause the appellee was a witness in his own behalf, and testified to the following among other facts, to wit : "I knew the rule was for a person to get a ticket or order to ride on freight trains. * * * Applied at the office for ticket at window. The window of ticket-office is near the

north door of gentlemen's room. There was no one inside of office that I could see; did not call or make any alarm; did not ask for ticket. I made no effort to get a ticket, except to look in at the window. * * * Did not look for any one, or wait to see if any one could be found, but went over to Tim Murphy's saloon, which was across the track from the depot. Stayed there a short time, bought some coal oil, and then went to the caboose and got in it. In five minutes the train started. * * * I got off of the train near the west end of the switch, and it came to a full stop for me to get off."

These were the statements of the appellee, made under the sanction of his oath, and they show very clearly, as it seems to us, that, while he had full knowledge of the appellant's regulation or rule, which imposed a reasonable condition upon his right to carriage as a passenger in its freight trains, and utterly forbade its officers in charge of such trains to carry passengers thereon upon any other terms than those prescribed in said rule, yet he made no effort whatever to procure a freight-train ticket or order from the appellant, in compliance with such rule. Indeed, the appellee's own testimony, as we have quoted it, shows beyond all room for reasonable doubt, that he had no wish or desire to procure for himself the requisite ticket or order, in compliance with the known rule of the appellant; for, while he testified that he made no effort to get a ticket, except to look in at the office window, yet he said immediately afterward, that he did not look for any one, and did not wait to see if any one could be found, to sell him a ticket.

Upon the appellee's own evidence, and upon the law applicable to the facts thereby established, we are clearly of the opinion that the appellee has failed to show any cause of action in his behalf against the appellant, by reason of the matters alleged in his complaint. As we have already said, the complaint was bad on the demurrer thereto for the

want of facts; but the appellee's own evidence utterly failed, we think, to make as good a case in his behalf as did the allegations of his complaint.   In our consideration of the questions arising under the alleged error of the court in overruling the motion for a new trial, we have rested the case wholly upon the appellee's own evidence.   That far forth it is a case, not of conflicting evidence, but of an utter failure of evidence to sustain the material allegations of the complaint.   On account of such failure of evidence, it seems to us that the court clearly erred in overruling the appellant's motion for a new trial.

The judgment is reversed, at the appellee's costs, and the cause is remanded with instructions to sustain the demurrer to the complaint, and for further proceedings in accordance with this opinion.